| | | | |
|---|---|---|---|
| FRED MESSICK, as sole proprietor of Monteagle Truck Center, | ) ) ) | | |
| Plaintiff, | ) ) ) | | |
| v. | ) ) | No.: | 1:19-CV-45-KAC-SKL |
| DANIEL RUSKEY, in his individual and Official capacity as Lieutenant with the Tennessee Department of Safety, et al., | ) ) ) ) ) | | *Lead Case Consolidated with* |
| Defendants. | ) ) ) | | |
| CASSIE KILGORE, as sole proprietor of Rocky Top Wrecker Service, | ) ) ) | | |
| Plaintiff, | ) ) ) | | |
| v. | ) ) | No.: | 1:19-CV-55-KAC-SKL |
| DANIEL RUSKEY, in his individual capacity as Lieutenant with the Tennessee Department of Safety, et al., | ) ) ) ) ) | | *as Consolidated with* |
| Defendants. | ) ) ) | | |
| RODNEY KILGORE, as sole proprietor of Monteagle Wrecker Service, et al., | ) ) ) | | |
| Plaintiffs, | ) ) ) | | |
| v. | ) ) | No.: | 1:19-CV-180-KAC-SKL |
| DANIEL RUSKEY, in his individual capacity as Lieutenant with the Tennessee Department of Safety, et al., | ) ) ) ) ) | | |
| Defendants. | ) ) | | |

**MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT**

Before the Court are three consolidated cases brought by Plaintiffs, wrecker service associates, against Defendants, officers of the Tennessee Department of Safety and Homeland Security. The current actions stem from a long running dispute that Plaintiffs have with the Tennessee Highway Patrol (THP). Plaintiffs have previously filed at least four lawsuits in this Court making similar accusations. *See Adair v. Tenn. Dep't of Safety & Homeland Sec.*, No. 1:14-CV-51-CLC-WBC (E.D. Tenn.) (*Adair I); Adair v. Hunter*, No. 1:16-CV-3-HSM-CHS (E.D. Tenn.) (*Adair II); Kilgore v. Hunter*, No. 1:16-CV-340-HSM-CHS (E.D. Tenn.) (*Kilgore I*); *Kilgore v. Ruskey*, No. 1:18-CV-295-HSM-SKL (E.D. Tenn.) (*Kilgore II*); *Adair v. Hunter*, 751 F. App'x 893 (6th Cir. 2019) (appeal of *Adair II*). In each of those previous cases that was not voluntarily dismissed, the Court awarded summary judgment for the defendants. *See id*. In each of the three consolidated cases currently pending before the Court (the "Pending Cases"), the Defendants have filed joint Motions for Summary Judgment [Docs. 111, 114, 117, 120].[1] For the reasons that follow, the Court grants summary judgment for Defendants in each of the Pending Cases and dismisses the Pending Cases.

## I. Procedural and Factual History

Plaintiffs in the Pending Cases are friends, family, and associates operating purportedly separate wrecking service businesses. The THP asserts that Plaintiff Rodney Kilgore controls these four commingled wrecking services [Doc. 119 at 6]. Rodney Kilgore, the leader of this wrecking service clan, ostensibly owns and operates Monteagle Wrecker Service of Chattanooga and Monteagle Wrecker Service of Kimball [Doc. 94 at 3]. He also formerly owned and operated Monteagle Wrecker Service of Grundy County [*Id.*]. Plaintiff William Kilgore, Rodney's father,

---

[1] This Opinion and Order cites to documents in the lead case, *Messick v. Ruskey, et al.*, 1:19-CV-45-KAC-SKL, into which the member cases have been consolidated [*See* Docs. 30, 47].

ostensibly owns and operates Sonny's Wrecker Service [*Id.*]. Rodney's sister, Plaintiff Cassie Kilgore, ostensibly owns and operates Rocky Top Wrecker Service [Doc. 93 at 2]. Rocky Top Wrecker Service is located on the same premises as Rocky Top Truck Stop (another business owned by Rodney Kilgore) and Sonny's Wrecker Service [Docs. 119 at 6, 127 at 6]. Cassie Kilgore is not licensed to operate a wrecker, and the other Plaintiffs drive wreckers for her business [Doc. 127 at 16]. Plaintiff Fred Messick, an associate of the Kilgores, ostensibly owns and operates Monteagle Truck Center [Doc. 92 at 2]. Monteagle Truck Center operates from a location adjacent to Rocky Top Truck Stop [Doc. 120-3 at 4]. Danny Barnes, Rodney Kilgore's brother-in-law, formerly owned the Monteagle Truck Center, and Kim Kilgore formerly owned the physical property [Doc. 128 at 1-2]. Danny Barnes and Kim Kilgore sold the Monteagle Truck Center and property to Messick in 2014 [*Id.*].

Defendants are THP Officers within the Tennessee Department of Safety and Homeland Security (TDOS). The THP maintains a list of State-approved wrecking services to call when a disabled motor vehicle must be towed from the highway [Doc. 92-6 at 3]. This list is referred to as the THP Wrecker Rotation Towing List (the "List") [Doc. 120-3 at 1]. Officers evenly distribute work to all of the wrecking services on the List [*See* Doc. 92-6 at 19]. To be placed on the List, wrecking services must comply with regulations published in the TDOS Towing Service Standards Manual (the "Manual"), and participants must reapply to be included on the List each year [*Id.* at 2-3]. THP officers are responsible for maintaining the List and ensuring that wrecking services comply with the regulations published in the Manual [Doc. 120-3 at 1]. Wrecking services that violate the regulations may be suspended or removed from the List [*Id.*]. In October 2013, THP promoted Defendant Lieutenant Daniel Ruskey to wrecker lieutenant in Chattanooga and made him responsible for investigating wrecking services for suspected violations of the regulations in

the Manual [Doc. 134-2 at 13]. Lieutenant Ruskey reported his findings relevant to these cases at formal hearings to Defendant Captain Jeff Mosley[2] who rendered a decision on each hearing [*Id.* at 5]. Defendant Lieutenant Colonel James Hutcherson[3] served as an appellate judge and reviewed Captain Mosley's decisions on appeal [Doc. 127 at 22]. Lieutenant Colonel Hutcherson played no role in the investigations [*Id.*].

In February 2013, under the supervision of a prior wrecking lieutenant, THP began investigating Plaintiffs' wrecking services for suspected violations of the wrecking service regulations and the Manual [Docs. 120-3 at 1, 130 at 2]. Because THP evenly divides work among each wrecking service on the List, a wrecking service may only be included on the List once and must be independent from every other company on the List [Doc. 120-3 at 3]. A wrecking service cannot seek to include multiple branches or subsidiaries of the same company on the List [*Id.*]. THP alleged that Monteagle Truck Center, then owned by Danny Barnes, and Sonny's Wrecker Service were not actually independent from Rodney Kilgore and his wrecking services [Docs. 114-4 at 1-2, 117-4 at 1-2]. After substantiating the allegations, THP suspended the Plaintiffs' wrecking services from the List in November 2013 [Doc. 130 at 2].

In response to the suspensions, William Kilgore, Rodney Kilgore, and Christine Adair, an employee of Monteagle Wrecker Service, sued THP officers alleging, among other causes of action, that the THP impermissibly removed the Kilgores from the List in retaliation for reporting that Lieutenant Johnny Hunter sexually harassed Ms. Adair (*Adair I*) [*Id.*]. None of the defendants in that case are defendants in the current lawsuits. This Court found that the plaintiffs had violated

---

[2] Plaintiffs' pleadings and the case caption refer to Captain Mosley by the last name "Mosely," but it appears that his last name is actually "Mosley" [*See* Docs. 111, 111-10].
[3] Plaintiffs' pleadings and the case caption refer to Lieutenant Colonel Hutcherson by the last name "Hutcheson," but it appears that his last name is actually "Hutcherson" [*See* Docs. 111, 111-13].

the Manual's regulations and thus failed to state a claim for relief related to their removal from the List [Order Denying Motion for Attorney Fees at 14, *Adair II*, No. 1:16-cv-3-HSM-CHS (E.D. Tenn., Mar. 15, 2019), Doc. 237]. Nonetheless, THP permitted the Monteagle Truck Center to be included on the List in 2014 after it was sold to Messick [Doc. 126 at 2]. Messick alleges that he purchased the Monteagle Truck Center from Rodney Kilgore, not Danny Barnes [Doc. 120-3 at 1]. THP permitted the Plaintiffs' other wrecking services to return to the List after they served a suspension [*See* Docs. 127-130].

Following the filing of the lawsuit *Adair I*, THP again suspended Plaintiffs' wrecking services from the list temporarily, and William and Rodney Kilgore filed a complaint (*Kilgore I*) alleging that the THP retaliated against them for filing *Adair I*. Lieutenant Ruskey is the only Defendant in these cases who was also a party to *Kilgore I*. This Court granted the defendants summary judgment in *Kilgore I* primarily on the grounds that plaintiffs had not established that defendants took an adverse action or that there was a causal connection between plaintiffs' protected conduct and any adverse actions [Order Granting Defendants Summary Judgment at 6-28, *Kilgore I*, No. 1:16-cv-340-HSM-CHS (E.D. Tenn., June 28, 2018), Doc. 165]. The Court concluded that "the uncontroverted evidence established that the removal decision was prompted solely by [a passenger's] complaints concerning [Rodney] Kilgore's cell phone use while driving the tow truck" [R. & R. Denying Motion for Attorney Fees at 4, *Kilgore I*, No. 1:16-cv-340-HSM-CHS (E.D. Tenn., Nov. 27, 2018), Doc. 176].

Approximately one month after this Court granted summary judgment in *Kilgore I* on or about June 28, 2018, the THP served Plaintiffs with a "determination" in the administrative matter *State of Tennessee Department of Safety v. Monteagle Wrecker Service et al.* [Docs. 94-1, 111-11]. The determination alleged that Plaintiffs' businesses collaborated with one another in

5

violation of the Manual, and the THP scheduled hearings on the determination for later that summer [*Id.*]. THP also alleged several additional violations of the Manual, including that Messick overcharged customers [*Id.*]. Messick and Cassie Kilgore appeared at their initial determination hearings with counsel [Docs. 126 at 15, 127 at 12-13]. The THP granted them continuances after Lieutenant Ruskey presented his evidence so that they could have more time to "marshal [their] evidence" [Doc. 127 at 12]. Following the continuance, they appeared before Captain Mosley and presented a defense [Docs. 127 at 12-13, 126 at 15]. At William and Rodney Kilgore's initial determination hearing, counsel appeared and also asked for a continuance after hearing the evidence [Doc. 94-2]. William and Rodney Kilgore attended the second hearing [Doc. 129 at 13]. Counsel gave a brief statement to the court contesting the allegations; however, William and Rodney Kilgore chose not to present a case [Docs. 94-2 at 37-38, 129 at 13, 130 at 24-25]. At the determination hearings, Captain Mosley served as the trier of fact, and Lieutenant Ruskey presented the alleged violations [Doc. 94-2]. Although Captain Mosley dismissed some of the allegations, he ultimately concluded that Plaintiffs had violated the Manual again, and the THP permanently removed their respective wrecker services from the List [Docs. 126 at 15, 127 at 16, 129 at 13, 130 at 25].

Plaintiffs appealed that decision, and Lieutenant Colonel Hutcherson upheld Captain Mosley's decision in each matter [*Id.*]. Plaintiffs subsequentially filed petitions for review in the Chancery Court of Davidson County, Tennessee. Those cases were pending when Plaintiffs filed the present federal actions, but the Davidson County Chancery Court subsequently dismissed the cases of Cassie Kilgore and Messick as untimely filed [Docs. 35 at 1-2; 36]. William and Rodney Kilgore have since voluntarily dismissed their appeals before the Chancery Court [Docs. 129 at 13, 130 at 26].

Plaintiffs now challenge THPs decision to remove them from the List and Defendants' role in that decision. In a kitchen-sink approach to pleading, Plaintiffs allege that Defendants have variably violated their Fourteenth Amendment rights to Procedural and Substantive Due Process, violated their Fourteenth Amendment rights to Equal Protection, committed tortious interference with contractual and business relations, violated their First Amendment rights to freedom of association, violated their First Amendment rights to freedom of speech by retaliating against them, committed a violation that leads to "joint and several liability," and conspired to violate their rights in contravention of 42 U.S.C. § 1985. Defendants moved for summary judgment on all of Plaintiffs' claims.

## II.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the nonmoving party and make all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The moving party bears the burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden, the opposing party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.'" *Nat'l Satellite Sports, Inc.*, 253 F.3d at 907 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

7

### III. <u>Analysis</u>

#### a. **Plaintiffs' Fourteenth Amendment Procedural Due Process Claims**

Plaintiffs assert that Defendants violated their rights to Procedural Due Process as they relate to their final determination hearings. Specifically, Plaintiffs argue that they received insufficient notice, THP prevented them from cross-examining witnesses, and Captain Mosley was a biased decision maker [Docs. 134 at 6-10, 136 at 6-10, 138 at 6-10]. Under the Fourteenth Amendment, no State may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. To establish a Procedural Due Process claim, Plaintiffs must show that: (1) they had a property interest protected by the Due Process Clause, (2) they were deprived of this protected interest, and (3) the State did not afford them adequate procedural rights. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).

As an initial matter, this Court need not decide whether Plaintiffs possessed a property interest in remaining on the List that was deprived. Although, this Court has previously held that William and Rodney Kilgore did not possess a protected property interest in remaining on the List, [Order Granting Summary Judgment at 15-17, *Adair II*, No. 1:16-cv-3-HSM-CHS (E.D. Tenn., June 18, 2018), Doc. 213], for the limited purposes of their summary judgment motions, "Defendants do not dispute that Plaintiff had a property interest in remaining on" the List, [Doc. 122 at 9]. There likewise appears to be no dispute that Plaintiffs were deprived of any protected property interest that they may have had [*See* Docs. 113, 116, 119, 122]. Accordingly, the Court need only determine whether Defendants afforded Plaintiffs adequate procedural rights at their final determination hearings.

Procedural Due Process essentially requires that Plaintiffs be afforded adequate "notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985);

8

*see also Hudson v. City of Highland Park*, 943 F.3d 792, 801 (6th Cir. 2019) ("[T]he Fourteenth Amendment generally requires 'that the state provide a person with notice and an opportunity to be heard.'" (quoting *Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005))). Plaintiffs assert that they received insufficient notice because the notice for their determination hearings contained the heading "Determination," which they contend suggests that the outcomes of the proceedings were predetermined [Docs. 134 at 9, 136 at 9, 138 at 9]. The heading given to the notification document does not alter the fact that it notified Plaintiffs of their respective determination hearings [*See* Doc. 111-11]. The sixteen-page document specified the relevant allegations along with the time, place, and manner of the relevant hearing [*Id.*]. And there is no question that Plaintiffs received notice, as each appeared at his or her hearing or appeared via counsel [*See* Docs. 127 at 12; 94-2; 129 at 13]. To the extent that Plaintiffs contend that the outcomes of the proceedings were preordained, they challenge the adequacy of the hearing, not the sufficiency of notice. The Court addresses the adequacy of the determination hearings below.

Plaintiffs also allege that the hearing procedures violated their Constitutional rights because Plaintiffs purportedly were not given an opportunity to cross-examine witnesses and the decisionmaker was biased. The requirements of due process are "flexible and call[ ] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Court must weigh three factors when deciding how much process is due: (1) "the private interest that will be affected;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Plaintiffs had no absolute right to cross-examine witnesses. *See Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 636 (6th Cir. 2005 ) ("Some circumstances may require the opportunity to

9

cross-examine witnesses, though this right might exist only in the most serious of cases."); *see also Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400 (6th Cir. 2017) ("The right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings." (quoting *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972))). "[I]n general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Cleveland Bd. of Educ.*, 470 U.S. at 545 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 343 (1976)). In the context of terminating a tenured public employee, the Supreme Court determined that an individual is entitled to notice, an explanation of the evidence against him, and an opportunity to present his side of the story. *Cleveland Bd. of Educ.*, 470 U.S. at 546. "To require more than this . . . would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* The Sixth Circuit has recently remarked, however, that "the denial of procedures with great probative value, such as cross-examination, may help establish that due process was denied." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 583 (6th Cir. 2021).

The procedures THP utilized for the determination hearings met Due Process's requirements. Messick and Cassie Kilgore participated in evidentiary hearings where they were represented by counsel and heard the evidence against them [Docs. 127 at 12-13, 126 at 15]. After receiving a continuance to marshal their evidence, they presented their own case, testified before the judge, and questioned witnesses [*Id.*]. William and Rodney Kilgore likewise had counsel represent them at their proceedings. Counsel heard the evidence against William and Rodney Kilgore, and the court granted a continuance so they could prepare a defense [Doc. 94-2 at 26, 37]. William and Rodney Kilgore attended the second hearing with counsel and disputed the allegations but chose not to present a case [Doc. 129 at 13].

10

Despite their assertion to the contrary, Plaintiffs had the opportunity to cross-examine witnesses at their hearings. In support of their assertion that they could not question witnesses, Plaintiffs point to the fact that the judge, Captain Mosley, indicated at the outset of Messick's hearing that Captain Mosley would "ask any follow-up questions" of the Parties after they each presented their case. [Doc. 120-8 at 3-4]. Captain Moesely also stated that he would "hear the testimony of the witnesses and question any witnesses that either side wishes to call" [*Id.* at 4]. Nonetheless, Messick admits that he was allowed to ask questions [Doc. 128 at 16]. The transcript also shows that his attorney cross-examined witnesses during the hearing [*See, e.g.,* Doc. 120-8 at 18, 25]. Similarly, Cassie Kilgore admits that she was permitted to ask questions at the hearing, and the transcript shows that her attorney asked numerous questions [*See* Docs. 93-8, 127 at 13]. While Captain Mosley initially indicated that questions of the witnesses would need to be presented to him first and he would then ask the witnesses, Cassie Kilgore's attorney conducted a direct examination of Ms. Kilgore without following this process [*Id.*]. The determination hearings of William and Rodney Kilgore were to follow similar procedures, [Doc. 94-2 at 3], but they elected not to present a case, [*id.* at 37-38]. Following the determination hearings, Captain Mosley's decisions were subject to several layers of appellate review. Plaintiffs even had the opportunity to appeal their determinations in state court, which they did [Docs. 35 at 1-2; 36; 127 at 17; 129 at 23; 130 at 26].

These procedures satisfy the minimum Constitutional due process requirements. Plaintiffs' interests were not so significant as to require a full trial. *See Koenigs, L.L.C. v. City of Savannah*, No. 17-CV-1109, 2019 WL 3254799, at *8-9 (W.D. Tenn. July 18, 2019) (similar administrative procedures to remove a wrecking service from the List satisfied Procedural Due Process). Plaintiffs characterize their interest as "the deprivation of their livelihoods," [Docs. 132 at 8, 136

at 6, 138 at 8]; however, their removal from the List only kept the State from providing them towing business on the List—it did not prevent them from operating a wrecking service. An interest in receiving State business on the List is no more significant than other cases where an evidentiary hearing was not even required. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 343 (1976) (holding that an evidentiary hearing was not required prior to the termination of disability benefits). Further, Plaintiffs fail to suggest how the outcome of the hearings would have been any different if additional procedures were permitted, and the record does not suggest any benefits that additional procedures would have afforded them. The procedures in place afforded Plaintiffs adequate protections and, in fact, resulted in the dismissal of several of the charges against them [Docs. 128 at 15, 127 at 16]. Moreover, the State has an interest in efficiently resolving violations of the Manual and removing noncompliant wrecker services. In addition to the costs of any further procedural protections, the State must act expediently to protect other wrecker services from unfair competition and protect vulnerable private citizens from unscrupulous towing practices. Plaintiffs' interests in additional procedural protections do not outweigh the State's interests in efficiently and expeditiously resolving violations of the Manual and removing wrecker services that do not comply.

Finally, Due Process requires that a decisionmaker be neutral. *See Williams v. Pennsylvania*, 571 U.S. 1, 8 (2016) (Due process requires "'an absence of actual bias' on the part of a judge." (quoting *In re Murchison*, 349 U.S. 133, 136 (1955))). The Court applies an objective standard, asking whether an "average [decisionmaker] in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Johnson v. Morales*, 946 F.3d 911, 918 (6th Cir. 2020) (quoting *Williams*, 136 S. Ct. at 1905)). Decisionmakers are presumed to be honest and neutral, and claims of bias must overcome that presumption. *Johnson*, 946 F.3d at 918.

12

Plaintiffs put forward no evidence to rebut that presumption. In fact, Messick concedes that Captain Mosley "had no interest in the outcome" [Doc. 128 at 15-16]. Cassie and Rodney Kilgore similarly concede that Captain Mosley had no interest in the outcome of the proceeding, [Docs. 127 at 17, 130 at 30], and that Lieutenant Colonel Hutcherson did not participate in the investigation and was not aware of the case until shortly prior to reviewing the appeal, [Docs. 127 at 22, 130 at 31]. William and Rodney Kilgore also concede that Captain Mosley was not biased, [Docs. 129 at 14, 114-2 at 24, 117-2 at 4-5], and that Lieutenant Colonel Hutcherson had no involvement in the investigation and was not aware of the case until shortly prior to reviewing the appeal, [Docs. 129 at 19-20, 130 at 31]. Instead, in their attempt to demonstrate bias, Plaintiffs rely solely on the fact that Captain Mosley and Lieutenant Colonel Hutcherson were officers of the same agency that investigated Plaintiffs' businesses [*See* Doc. 136 at 10]. It is well-established, however, that there is no per se prohibition against an administrative agency both investigating and adjudicating a dispute. *See Woods v. Willis*, 515 F. App'x 471, 480 (6th Cir. 2013) ("A plaintiff claiming bias has a heavy burden to shoulder, one that is not met with a mere showing that the agency served as both a "prosecutor" and a "judge."). Accordingly, Plaintiffs' Procedural Due Process claims fail.

### b. Plaintiffs' Fourteenth Amendment Substantive Due Process Claims

Next, Plaintiffs make vague allegations regarding a violation of their Fourteenth Amendment Substantive Due Process rights. Specifically, they allege that "Defendants have selectively enforced" the Manual's regulations and this "discriminatory" and "uneven and inconsistent" application has violated their Substantive Due Process rights [Docs. 92 at 12, 93 at 13, 94 at 24-25]. Under a "Substantive Due Process" heading in their responses to Defendants' motions for summary judgment, Plaintiffs reference "claims of retaliation and freedom of

13

association" [Docs. 132 at 10-11, 134 at 10-11, 136 at 10-11, 138 at 10-11]. Plaintiffs did not plead these purported "Substantive Due Process" retaliation and freedom of association claims in their Amended Complaints [*See* Docs. 92 at 12, 93 at 13, 94 at 24-25]. However, even if they had, all of Plaintiffs Substantive Due Process claims are ripe for dismissal.

Plaintiffs must pursue their "Substantive Due Process" claims under the more specific constitutional protections implicated by those claims. The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The conduct that Plaintiffs complain of in their vague "Substantive Due Process" claims is also alleged to violate the Procedural Due Process Clause, the Equal Protection Clause, and the First Amendment [*See* Docs. 92-94]. Plaintiffs do not raise any allegations in their Substantive Due Process claims that are not also covered by their other constitutional claims. Therefore, just as this Court held in *Adair II*, their Substantive Due Process claims must be dismissed. *See Adair II*, 236 F. Supp.3d 1034, 1045-46 (E.D. Tenn. 2017).

Even if these causes of action were properly pled and analyzed under a Substantive Due Process framework, the claims fail. The Due Process Clause protects those rights and liberties that are "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1991) (citations and quotations omitted); *see also Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990). "There is no fundamental right to inclusion on a governmental towing rotation list that is implicit to our concept of ordered liberty."

14

*Koenigs, L.L.C. v. City of Savannah*, No. 17-CV-1109, 2019 WL 1186863, at *2 (W.D. Tenn. Mar. 13, 2019). The Due Process Clause may dictate how companies can be removed from the List, but it does not forbid removal. *Id.* Thus, Plaintiffs' Substantive Due Process claims also fail.

### c. Plaintiffs' Fourteenth Amendment Equal Protection Claims

Plaintiffs also assert Equal Protection violations based on Defendants' alleged selective enforcement of the Manual against them. Plaintiffs claim that Defendants removed their companies from the List while the wrecking services operated by another individual and his son were allowed to combine into one operation to avoid removal [Docs. 92 at 13-15, 93 at 13-15, 94 at 25-28]. Remarkably, Plaintiffs cite no law in response to Defendants' motions for summary judgment on Plaintiffs' Equal Protection claims [*See* Docs. 132 at 11-13, 134 at 11-13, 136 at 11-13, 138 at 11-13].

The Equal Protection Clause provides that no state shall deny to "any person within its jurisdiction the equal protection of the laws." U.S Const. amend. XIV § 1. To sustain an Equal Protection claim for selective enforcement of the law, a plaintiff must establish three elements:

> First, [the state actor] must single out a person belonging to an identifiable group, such as ... a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the [party] belongs to.

*Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 394-95 (6th Cir. 2016) (emphasis omitted) (quoting *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997)).

Although Plaintiffs have not alleged that they belong to an "identifiable group," the Supreme Court has recognized that in limited circumstances there can be a "class of one." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In at least one case, the Sixth Circuit has held that a plaintiff can be a "class of one" if a plaintiff shows (1) that he has been intentionally treated

15

differently from others similarly situated and (2) the government had no rational basis for the treatment. *Johnson v. Morales*, 946 F.3d 911, 939 (6th Cir. 2020); *but see id.* at 930 (J. Nalbandian dissenting in part) (questioning whether the "class-of-one" line of cases survives *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008) where "the relevant state action involves discretionary decision making based on a vast array of subjective, individualized assessments" (quotations and citations omitted)). When evaluating whether parties are similarly situated, they need not be exactly the same but must be "similarly situated in all relevant respects." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012) (quoting *TriHealth, Inc. v. Bd. Of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005)). "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negat[ing] every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Johnson*, 946 F.3d at 939 (quoting *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005)). "'[I]f there is any reasonably conceivable state of facts that could provide a rational basis for' the state's conduct, then the state has not violated the constitution." *Systematic Recycling LLC v. City of Detroit*, 635 F. App'x 175, 181 (6th Cir. 2015) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 397, 313 (1993)). Moreover, for a claim of selective enforcement, "[t]here is a strong presumption that state actors have properly discharged their official duties, and to overcome that presumption plaintiff must present clear evidence to contrary; the standard is a demanding one." *Lofties v. Elizabeth Grabel SP567*, 826 F. App'x 539, 542 (6th Cir. 2020) (quoting *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997)).

Plaintiffs have not shown that Defendants treated them differently than any other similarly situated wrecking service. Plaintiffs assert that Glenn Matthews, an owner of a rival wrecking service, had commingled his business with his son's since 2006, yet the THP allowed Matthews

and his son to consolidate their wrecking services rather be remove from the List [Docs. 132 at 12-13, 134 at 12-13, 136 at 12, 138 at 12]. However, Plaintiffs' businesses and Matthews's businesses were not similarly situated. Matthews voluntarily consolidated his two wrecking services on his own initiative when he learned that THP intended to investigate [Doc. 128 at 17]. Unlike Plaintiffs, Matthews did not maintain multiple commingled wrecking services on the List when THP began to investigate. Plaintiffs have not identified any other allegedly similarly situated wrecker services [*See* Doc. 132 at 11-13, 134 at 11-13, 136 at 11-13, 138 at 11-13].

Even if Matthews's businesses were similarly situated, which they were not, Plaintiffs cannot establish that the State lacked a rational basis for removing Plaintiffs' businesses from the List. The Defendants maintain that Plaintiffs were removed from the List for violations of the Manual, including billing improprieties ***and*** a failure to be independent [Docs. 122 at 13, 113 at 13, 116 at 16]. These serious violations provide a rational basis for the State to remove Plaintiffs from the List. Moreover, Matthews proactively corrected his violations whereas Plaintiffs refused to do so [Doc. 128 at 17]. Plaintiffs also failed to overcome the presumption that the Defendants properly discharged their duties and did not act out of a discriminatory animus or ill-will. They have not identified any facts that support a finding of ill-will [*See* Docs. 132 at 11-13, 134 at 11-13, 136 at 11-13, 138 at 11-13]. They instead rely on speculation, conclusory statements, and the allegedly disparate treatment of Matthews [*Id.*]. Because Plaintiffs fail to "put forward more than speculations or intuitions," they fail to show "not only a 'class of one' designation, but also the second element of [their] selective enforcement claim (discriminatory purpose)." *See Bowman v. City of Olmsted Falls*, 756 F. App'x 526, 530-31 (6th Cir. 2018) (internal citations omitted). Accordingly, Plaintiffs' Equal Protection claims fail.

17

### d. Plaintiffs' Claims of Interference with Contractual and Business Relations

Plaintiffs also assert that Defendants interfered in their contractual and business relations in violation of Tenn. Code Ann. § 47-50-109 and the common law of Tennessee. Section 47-50-109 codified the Tennessee common law claim for tortious interference with a contract, also known as procurement of the breach of a contract. *Myers v. Pickering Firm, Inc.,* 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997); *see also Atchley v. RK Co.*, 224 F.3d 537, 540 (6th Cir. 2000). To establish a violation for the procurement of the breach of a contract:

> 1) there must be a legal contract; 2) the wrongdoer must have knowledge of the existence of the contract; 3) there must be an intention to induce its breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract; 6) the act complained of must be the proximate cause of the breach of the contract; and, 7) there must have been damages resulting from the breach of the contract.

*Myers*, 959 S.W.2d at 158 (citations omitted). Plaintiffs all assert that they had an unwritten contract with the State to provide towing and wrecker services [Docs. 134 at 13, 136 at 13, 138 at 13]. Messick's Amended Complaint additionally alleges that Defendants interfered with his right to drive for other wrecker services [Doc. 92 at 16-17]. Cassie Kilgore's Amended Complaint additionally alleges that Defendants interfered with her right to employ drivers from other wrecker services [Doc. 93 at 16-17]. The Third Amended Complaint of William and Rodney Kilgore additionally claims that Defendants interfered with their right to employ other wrecker companies [Doc. 94 at 29]. However, Plaintiffs failed to address any of these allegations regarding interference with third-parties in their oppositions to Defendants' motions for summary judgment. Accordingly, Plaintiffs abandoned these third-party claims. *See Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870 (6th Cir. 2015); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006). As discussed further below, no genuine issue of material fact exists as to these claims. *See Briggs*, 611 F. App'x at 870-71 ("[A] district court may not use a party's failure to respond (in

whole or in part) as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c).") (citations and quotations omitted).

Under Tennessee law, "[a] contract is an agreement between two or more persons that creates obligations that are legally enforceable by the contracting parties." *Wallis v. Brainerd Baptist Church*, 509 S.W.2d 886, 898-99 (Tenn. 2016). For a contract to be enforceable under Tennessee law, it "must represent mutual assent to its terms, be supported by sufficient consideration, be free from fraud and undue influence, be sufficiently definite, and must not be contrary to public policy." *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861 (Tenn. Ct. App. 2002).

Plaintiffs have not identified any legal contract with which the Defendants interfered [*See* Docs. 134 at 13, 136 at 13-14, 138 at 13-14]. Messick concedes that he did not have a contract with the other Plaintiffs to drive for them, [Docs. 120-2 at 2; 120-1 at 41:14-17, 43:3-13], and Cassie Kilgore concedes that she did not have contracts with the other Plaintiffs for them to drive for her, [Doc. 127 at 20-21]. William and Rodney Kilgore have also not identified any contracts with other wrecker services with which Defendants could have interfered [*See* Docs. 132 at 13-14, 134 at 13-14]. More substantively, no Plaintiff had a contract with the State to be on the List. Plaintiffs admit that they never had written contracts [Docs. 132 at 13, 134 at 13, 136 at 13, 138 at 13]. While it is unclear, they appear to assert that their placement on the List constituted a contract. However, they fail to explain how a legally enforceable contract could have arisen. Plaintiffs do not identify who they allegedly made a contract with, whether that individual had the legal authority to bind the State of Tennessee by contract, or the terms of any alleged contract. Moreover, licenses and permits issued by the State of Tennessee are generally not contracts, and Plaintiffs provide no evidence indicating that their placement on the List is an exception. *See*

19

*Janeway v. State Bd. Of Chiropractic Examiners*, 231 S.W.2d 584, 587 (Tenn. 1950) ("[A] license to practice a profession affecting the welfare of the public, and therefore, subject to the police power of the state is not a contract entitling the holder to continue the practice of his profession unrestricted and unregulated."); *see also Mapco Petroleum, Inc. v. Basden*, 774 S.W.2d 589 (Tenn. 1989) ("'A license to sell liquor (or beer) is not a contract by right of property but is merely a temporary permit to do that which would otherwise be unlawful." (quoting *McClellan v. State*, 282 S.W.2d 631, 633 (Tenn. 1955))); *Lufkin v. Tenn. Dep't of Revenue*, No. 03A01-9410-CH-00388, 1995 WL 231446, at *1 (Tenn. Ct. App. Apr. 20, 1995) ("[S]imply granting a license to practice law does not create a binding contract between the lawyer and the State.").

Even if there were contracts in place with the State for Plaintiffs to be on the List, Plaintiffs fail to demonstrate that the Defendants acted maliciously in terminating any purported contracts. In Tennessee, malice is the "willful violation of a known right." *Cyre-Laike Realtors, Inc. v. WDM, Inc.*, No. 02A01-9711-CH-00287, 1998 WL 651623, at *6 (Tenn. Ct. App. Sept. 24, 1998); *see also Clippinger v. Audatex N. Am., Inc.*, No. 20-CV-2501, 2021 WL 1823117, at *3 (W.D. Tenn. May 6, 2021). Malice may be shown if conduct was "intentional and without legal justification," and "interference is without justification if it is done for the indirect purpose of injuring the plaintiff or benefiting the defendant at the plaintiff's expense." *Cyre-Laike Realtors, Inc.,* 1998 WL 651623, at *6 (internal citations omitted). Here, Plaintiffs have put forth no facts supporting a claim that Defendants acted "without justification" as opposed to merely addressing Plaintiffs' violations of the Manual.

Plaintiffs likewise fail to establish tortious interference with business relations. Tortious interference with a business relationship requires: (1) an existing business relationship with specific third parties; (2) the defendant's knowledge of that relationship; (3) the defendant's intent

to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages. *Trau-Med of Am., Inc. v. Allstate Ins*, 71 S.W.3d 691, 701 (Tenn. 2002). Here too, Plaintiffs are deemed to have abandoned any claim that they had a contract or business relationship with other wrecker services because they have failed to address it in their responses to Defendants' motions for summary judgment. *See Briggs*, 611 F. App'x at 870; *Clark*, 178 F. App'x at 524-25. And there is no factual evidence of such relationships in the record.

Regarding any claims of interference with a business relationship between the Plaintiffs and the State, Defendants assert that there is no business relationship and that Defendants acted properly when they removed Plaintiffs from the List for violating the Manual [Doc. 113, 16-17; Doc. 116, 19; Doc. 119, 20; Doc. 122, 16]. Plaintiffs assert in response that Defendants' allegedly arbitrary enforcement of the Manual "amounts to tortious interference with business and contractual relations" [Doc. 132, 13-14; Doc. 134, 13-14; Doc. 136, 14; Doc. 138, 13]. This unadorned conclusion is insufficient to defeat Defendants' motions for summary judgment. Plaintiffs provide no factual support for this conclusion and instead blanketly state that "Plaintiff[s] dispute[] certain facts as set forth in Defendants' Memorandum in Support of their Motion for Summary Judgment as to this cause of action and would direct this Honorable Court's attention to Plaintiff[s'] Response[s] to Defendants' Statements of Undisputed Facts" [*Id.*]. Thus, the Court is left to speculate as to the factual basis for Plaintiffs' claims. Their responses to Defendants' Statements of Undisputed Facts are unavailing. They merely allege that "the entire proceedings appeared one sided" and "it was obvious throughout the entire proceedings that plaintiff was going to be permanently removed" [Doc. 128, 16; *see also* Doc. 129, 14]. Accordingly, they fail to demonstrate an improper motive or improper means by the Defendants and therefore do not

21

establish a prima facie case of tortious interference with a business relationship. Thus, Plaintiffs' claims of interference with contractual and business relations fail.

### e. First Amendment Freedom of Association Claims

The Constitutional right to freedom of association protects individuals' freedom to (1) enter into and maintain certain intimate or private relationships and (2) associate for the purpose of engaging in protected speech or religious activities. *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987). Plaintiffs raise two varieties of First Amendment Freedom of Association claims.

### 1. Fred Messick

Messick appears to assert that Defendants violated his First Amendment right to freedom of association by preventing him from associating, through his wrecker business, with the Kilgores whom he allegedly depended on for his financial livelihood [Doc. 136 at 14]. While Messick provides little factual detail for the basis of his claim, the Court surmises that Messick's claim challenges the Defendants' removal of Messick from the List for commingling his business with the Kilgores' wrecking services. Messick does not assert that his right to associate with the Kilgores implicates any conduct protected by the Constitution. Thus, his claim must fall within his "right to freedom of association in intimate human relationships." *See Cameron v. Seitz*, 38 F.3d 264, 274 (6th Cir. 1994) (internal citations omitted).

Generic employment and business relationships are not "intimate human relationships" protected by the Constitution. *See Bd. of Dirs. of Rotary Int'l*, 481 U.S. at 544-47; *Roberts v. U.S. Jaycees*, 468 U.S. 609, 620 (1984); *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93-94 (1945); *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 598-99 (6th Cir. 2013). The Supreme Court has expressly foreclosed that argument. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 620 (1984). The only

factually-supported purpose of Messick's relationship with the Kilgores is financial [Doc. 136 at 15]. Moreover, Defendants did not prevent Messick from having other relationships with the Kilgores unrelated to their inappropriately commingled wrecker businesses. Accordingly, Defendants have not violated Messick's freedom of association.

### 2. Cassie, William, and Rodney Kilgore

Cassie, William, and Rodney Kilgore appear to assert that Defendants violated their First Amendment right to freedom of association by "virtue of Defendants' interference with contractual and business relations" [Docs. 93 at 17-18, 94 at 31]. William and Rodney Kilgore also assert a violation of their right to freedom of association under the Fourteenth Amendment [Doc. 94 at 30-31].

Plaintiffs may base a freedom of association claim on a theory of either interference or retaliation. *See, e.g., Hartwell v. Houghton Lake Cmty. Schs.*, 755 F. App'x 474, 476 (6th Cir. 2018) (advancing both an interference theory and a retaliation theory). The Amended Complaints of Plaintiffs Cassie, William, and Rodney Kilgore only allege claims for interference with their right to freedom of association [*See* Docs. 93 at 17-18, 94 at 30-31]. They appear to claim that Defendants prevented them from maintaining a business relationship with the other Plaintiffs and that this foreclosed business relationship has led to financial challenges impacting their respective families [*See id.*]. However, "[b]usiness relationships do not support intimate association claims." *Fiore v. City of Detroit*, No. 19-10853, 2019 WL 3943055, at *5 (E.D. Mich. Aug. 21, 2019). Just as with Messick, the Kilgores too failed to assert that Defendants interfered with an intimate

relationship protected by the Constitution. Thus, Plaintiffs' First Amendment Freedom of Association claims fail.[4]

### f. First Amendment Retaliation Claims by William and Rodney Kilgore

William and Rodney Kilgore assert that Defendants removed them from the List in retaliation for filing the lawsuits in *Adair II* and *Kilgore I* in violation of the First Amendment [*See* Doc. 94, 19-22].[5] A First Amendment retaliation claim based upon allegedly protected speech requires a plaintiff to prove that: (1) he engaged in protected activity; (2) an adverse action was taken against him that would deter an ordinary person from continuing to engage in the protected activity; and (3) the adverse action was motivated, at least in part, by plaintiff's protected conduct. *Thaddeus-X*, 175 F.3d at 394. A plaintiff bears the burden of establishing the causal connection between his protected conduct and the adverse action. *Dade*, 802 F. App'x at 882. The retaliatory motive "must be a 'but for' cause" of the plaintiff's injury. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019); *see also DeCrane v. Eckart*, 12 F.4th 586, 602 (6th Cir. 2021). If the plaintiff can show a causal connection, the burden shifts to the defendant to show he would have taken the adverse action regardless of the protected activity. *Dade*, 802 F. App'x at 882-83; *but see*

---

[4] To the extent that the Kilgores allege that Defendants retaliated against them for having a protected intimate relationship with their family members, that claim also fails. Plaintiffs failed to show that Defendants' decision to remove Plaintiffs' businesses from the List was substantially motivated by Plaintiffs' familial associations, rather than their violations of the Manual. "The plaintiff bears the burden of establishing 'a causal connection between the protected conduct and the adverse action.'" *See Dade v. Baldwin*, 802 F. App'x 878, 882 (6th Cir. 2020) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*)).

[5] William and Rodney Kilgore's Amended Complaint also asserts that the THP caused Rodney Kilgore to lose a prospective job to clean up an accident site for S&S Trucking, [Doc. 94 at 18], and that "an elderly lady who pays for AAA services was denied Plaintiff Rodney Kilgore's AAA Service by the THP," [*id.* at 19]. However, these two references to potential retaliation lack factual support, and Plaintiffs did not address them in their responses to the Defendants' motions for summary judgment.

24

*DeCrane*, 12 F.4th at 602 (noting that within the Sixth Circuit there are "conflicting statements on who bears the burden to prove but-for causation").

The Parties agree that for the purposes of this motion William and Rodney Kilgore engaged in protected activity and suffered an adverse action [Doc. 119 at 10]. Indeed, William and Rodney Kilgore engaged in constitutionally protected activity when they filed suit in *Adair II* and *Kilgore I*. *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) ("The filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment."). And the removal of William and Rodney Kilgore's companies from the List may constitute an adverse action [Doc. 119 at 10]. *See Lucas v. Monroe Cnty.*, 203 F.3d 964, 974 (6th Cir. 2000).

However, William and Rodney Kilgore fail to show a causal connection between the protected conduct and adverse action. "To create a genuine issue of material fact on causation, a plaintiff 'must point to specific, nonconclusory allegations reasonably linking' the plaintiff's protected activity to the adverse action." *Spithaler v. Smith*, 803 F. App'x 826, 829 (6th Cir. 2020) (quoting *Steves v. Thetford Twp.*, 475 F. App'x 556, 560 (6th Cir. 2012)). "'Bare allegations of malice do not suffice to establish a constitutional claim' at the summary judgment stage." *Aqulina v. Wriggelsworth*, 759 F. App'x 340, 345 (6th Cir. 2018) (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)). William and Rodney Kilgore provide no direct evidence of Defendants' retaliatory motive. Instead, they attempt to rely primarily on temporal proximity between their filing of the lawsuits and THP's removal of their businesses from the List. Temporal proximity, however, is rarely sufficient to establish causation without additional indicia of retaliation. *Vereecke*, 609 F.3d at 401.

William and Rodney Kilgore assert that the instant adverse action occurred only four (4) weeks after the Sixth Circuit affirmed the district court's grant of summary judgment in *Adair II*,

which concluded that litigation, and that this temporal proximity provides circumstantial evidence of retaliation [Doc. 132 at 5]. They provide no legal support for measuring temporal proximity from the conclusion of a lawsuit. Rather, "[t]he relevant inquiry is the temporal proximity between the *discovery of protected conduct* and an adverse action." *Hartwell v. Houghton Lake Cmty. Schs.*, 755 F. App'x 474, 480 (6th Cir. 2018) (emphasis in original). Therefore, temporal proximity is measured from the initiation of the litigation. *See, e.g., Vereecke*, 609 F.3d at 400-01 (measuring temporal proximity from when a lawsuit was served). William and Rodney Kilgore filed their second lawsuit (*Adair II*) in January 2016 and their third lawsuit (*Kilgore I*) in August 2016, and THP served them with the initial determinations in July 2018 [Docs. 94-1, 111-11]. Therefore, at least twenty-three (23) months elapsed between the latest protected activity and any adverse action. Not only does "[s]ubstantial case law from this circuit caution[] about the permissibility of drawing an inference of causation from temporal proximity alone," but substantial time elapsed prevents William and Rodney Kilgore from relying on temporal proximity to establish a causal connection. *See Spithaler v. Smith*, 803 F. App'x 826, 830 (6th Cir. 2020) (quoting *Vereecke*, 609 F.3d at 400)).

Moreover, William and Rodney Kilgore fail to provide any other evidence of a retaliatory animus. They assert that the disparate treatment of Matthews provides circumstantial evidence of a retaliatory motive. However, as previously discussed, Matthews was not similarly situated to William and Rodney Kilgore; thus, Defendants' treatment of him does not provide any evidence of animus. Additionally, William and Rodney Kilgore's implicit suggestion that Defendans lacked a legitimate justification to remove them from the List does not provide evidence of retaliation.[6]

---

[6] Defendants assert that collateral estoppel bars the Kilgores from challenging that their businesses were commingled and that they violated the Manual [*See* Doc. 119 at 11]. Because the Kilgores fail to provide any evidence to contradict those findings, the Court need not determine whether collateral estoppel applies.

Mere disagreement with Defendants' determination that William and Rodney Kilgore violated the Manual is insufficient to establish retaliation. In the face of detailed allegations which were substantiated at a hearing and confirmed on appeal, William and Rodney Kilgore only assert general denials. While the Court must view the facts in the light most favorable to the Plaintiffs, this "does not require or permit the court to accept as true mere allegations that are not supported by factual evidence." *Rodriguez v. City of Cleveland*, 439 F. App'x 433, 456 (6th Cir. 2011) (citations and quotations omitted). A plaintiff "is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits,' showing that there is a genuine dispute for trial." *Id.* (quotations and citations omitted); *see also* Fed. R. Civ. P. 56(c). William and Rodney Kilgore fail to marshal facts to meaningfully challenge their violation of the Manual. And the ample evidence of underlying wrongful conduct warranting Defendants' actions weighs against a finding of a retaliatory motive.[7] Therefore, Plaintiffs have failed to "produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that [the adverse action] would not have occurred but for his engagement in protected activity." *Eckerman v. Tenn. Dep't of Safety,* 636 F.3d 202, 209 (6th Cir. 2010). Accordingly, William and Rodney Kilgore's First Amendment retaliation claims must be dismissed. *See Ehrlich v. Kovack*, 710 F. App'x 646, 650 (6th Cir. 2017) (citing *Vereecke*, 609 F.3d at 403).

### g. Purported First Amendment Retaliation Claims by Messick and Cassie Kilgore

In their motions for summary judgment, Defendants address claims for First Amendment retaliation allegedly made by Messick and Cassie Kilgore [*See* Docs. 122 at 21, 113 at 22, 144 at 11, 145 at 11]. However, neither Messick nor Cassie Kilgore asserted a claim for retaliation in

---

[7] Because Defendants have not violated the Constitution, the Court does not address Defendants' qualified immunity arguments.

27

their Amended Complaints [*See* Docs. 92, 93]. Messick and Cassie Kilgore, who are represented by counsel, chose not to bring such a claim, and the Court will not read one into existence at summary judgment. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394-95 (1987).

### h. Plaintiffs' Claims for "Joint and Several Liability"

Plaintiffs separately assert claims for "the joint and several liability of Defendant Hutcherson" [Docs. 92 at 18, 93 at 18, 94 at 32-33]. "Joint and several liability" is not an independent cause of action. *Haywood v. Moore*, No. 05-CV-276, 2006 WL 8442740, at *8 n.5 (E.D. Tenn. Sept. 8, 2006). Moreover, Tennessee has generally abolished the doctrine of "joint and several liability," with limited exceptions. Tenn. Code. Ann. § 29-11-107(b). Plaintiffs have not pled any of the limited statutory exceptions here [*See* Docs. 92 at 18, 93 at 18, 94 at 32-33]. However, their Amended Complaints could arguably be read to assert a federal claim for respondeat superior liability under Section 1983 because they assert that Lieutenant Colonel Hutcherson should be held liable due to his "supervisory and authoritative role in relation to Defendants Ruskey and Mosley" [Docs. 92 at 18, 93 at 18, 94 at 33]. But, Plaintiffs failed to address this potential claim in their responses to Defendants' motions for summary judgment, and are thus deemed to have abandoned any claim for respondeat superior liability. *See Briggs*, 611 F. App'x at 870; *Clark*, 178 F. App'x at 524-25. Nonetheless, out of an abundance of caution, the Court addresses any potential respondeat superior claims that Plaintiffs may have been attempting to raise.

Plaintiffs cannot rely on respondeat superior to establish supervisory liability under Section 1983. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (providing that Section 1983 liability cannot be premised upon a theory of respondeat superior). Instead, a plaintiff "must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier*

*v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). At a minimum, "a plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Plaintiffs have not put forth any factual support demonstrating that Lieutenant Colonel Hutcherson participated in or approved of any alleged unlawful conduct by Lieutenant Ruskey or Captain Mosley [*See* Docs. 134, 136]. Messick actually admits that Lieutenant Colonel Hutcherson did not do anything wrong, [Doc. 128 at 15], and that he had no role in the investigations of Plaintiffs, [Doc. 128 at 23]. Cassie and William Kilgore similarly admit that Lieutenant Colonel Hutcherson had no role in the investigation [Docs. 127 at 17, 22; 130 at 30, 31]. Additionally, to the extent that Plaintiffs assert supervisory liability for state law claims, their claims must fail. Tennessee has long held that "'[w]hen the [principal] is sued solely for misfeasance, or nonfeasance, on the part of his [agents] . . . under the doctrine of respondeat superior, a verdict . . . in favor of such agents . . . entitles the [principal] to a discharge from such claimed liability.'" *Abshure v. Methodist-Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 106 (Tenn. 2010) (quoting *D.B. Loveman Co. v. Bayless*, 160 S.W. 841, 842 (Tenn. 1913). Accordingly, since Plaintiffs' claims against Lieutenant Ruskey and Captain Mosley fail, their derivative claims against Lieutenant Colonel Hutcherson also fail.[8]

---

[8] Defendants also seek the dismissal of "joint and several liability" claims by Messick, William Kilgore, and Rodney Kilgore against Captain Mosley [Docs. 122 at 20-21, 116 at 20-21, 119 at 22]. However, Messick, William Kilgore, and Rodney Kilgore do not assert a claim against Captain Mosley in this count [*See* Docs. 92 at 18, 94 at 32-33].

### i. Plaintiffs' 42 U.S.C. Section 1985 Claims

Finally, Plaintiffs' assert that Defendants conspired to deprive their rights in violation of 42 U.S.C. § 1985 [Docs. 92 at 17-18, 93 at 15-16, 94 at 31-32]. Section 1985 prohibits conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3); *see also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005). Section 1985 does not create any substantive rights, so Plaintiffs must establish a violation of an underlying right. *Smith v. City of Toledo*, 13 F.4th 508, 520 (6th Cir. 2021). Section 1985 does not apply "to all tortious, conspiratorial interferences with the rights of others." *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971). Rather, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102. Therefore, to prevail in a Section 1985 claim here, Plaintiffs "must prove both membership in a protected class and discrimination on account of it." *See Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010).

Plaintiffs' claims for a violation of Section 1985 fail for a multitude of reasons. In their motions for summary judgment, Defendants assert that Plaintiffs have not alleged that they are members of a protected class [Docs. 113 at 14-15, 116 at 20, 119 at 20, 122 at 13-14]. Plaintiffs have not response to that argument [*See* Docs. 132, 134, 136, 138]. Accordingly, Plaintiffs have abandoned these claims. *See Briggs*, 611 F. App'x at 870; *Clark*, 178 F. App'x at 524-25. Further, Plaintiffs have not alleged, let alone supported with facts, any claims of class-based discrimination [*See* Docs. 92 at 17-18, 93 at 15-16, 94 at 31-32, 132, 134, 136, 138]. Because Plaintiffs' underlying discrimination claims lack merit, their Section 1985 conspiracy claims also fail. *Smith*

13 F.4th at 520 (dismissing a Section 1985(3) claim because there was no underlying substantive violation).

## IV.    <u>Conclusion</u>

Having assessed each of Plaintiffs' claims, this Court, once again, finds them without merit. Accordingly, the Court **GRANTS** "Defendants' Motion for Summary Judgment as to the Claims of Cassie Kilgore, (Case No. 1:19-CV-55)" [Doc. 111], "Defendants' Motion for Summary Judgment as to the Claims of William Kilgore, (Case No. 1:19-CV-180)" [Doc. 114], "Defendants' Motion for Summary Judgment as to the Claims of Rodney Kilgore, (Case No. 1:19-CV-180)" [Doc. 117], and "Defendants' Motion for Summary Judgment as to the Claims of Fred Messick, (Case No. 1:19-CV-45) [Doc. 120].   No claims remain in these consolidated actions.   An appropriate judgment shall enter.

IT IS SO ORDERED.

<div style="margin-left:45%">

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge

</div>

31